UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-80 (NEB/DTS)

UNITED STATES OF AMERICA,

Plaintiff,

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

v.

AYAN FARAH ABUKAR,

Defendant.

The United States of America and Ayan Abukar (the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The defendant fully understands the nature and elements of the crime with which she has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining charges against her in the Indictment.

2.    **Factual Basis**. The defendant is pleading guilty because she is in fact guilty of Count 1 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1

From in or about October 2020 through in or about 2022, the defendant knowingly participated in a scheme to defraud the federal child nutrition program, a program designed to provide free meals to children in need. The defendant and her co-conspirators obtained, misappropriated, and launder millions of dollars in program funds that were intended as reimbursements for the costs of serving meals to children. The defendant exploited changes in the program intended to ensure underserved children received adequate nutrition during the Covid-19 pandemic. Rather than feed children, the defendant took advantage of the Covid-19 pandemic— and the resulting program changes—to enrich herself by fraudulently misappropriating millions of dollars in federal child nutrition program funds.

Abukar was the executive director of Action for East African People ("AFEAP"), a nonprofit organization that ran healthcare clinics in the metro area prior to the Covid-19 pandemic. Abukar incorporated Action for East African People as a non-profit in 2017.

Beginning in October 2020, Abukar enrolled AFEAP in the Federal Child Nutrition Program under the sponsorship of both Feeding Our Future and Partners in Nutrition. Abukar opened at least seven purported food distribution sites in Minnesota, including in Minneapolis, Bloomington, Savage, and St. Paul.

Between October 2020 and February 2022, Abukar and AFEAP claimed to have served over 3 million meals. At times, Abukar fraudulently claimed to be serving meals to more than 5,000 children a day at the various sites throughout Minnesota. However, the number of meals that AFEAP purported to serve at its distribution sites was significantly inflated and Abukar only provided a fraction of those meals.

In support of these fraudulent claims, Abukar created and submitted fake documentation to cover up the fraud. Abukar submitted meal counts for different sites that were nearly identical to one another. These meal counts falsely claimed the sites were serving meals to thousands of children each day, which was not accurate and misstated the number of children purportedly receiving food.

Abukar also submitted fake attendance rosters. The rosters purported to list the name and age of each child that received a meal each day. But the rosters were fabricated and did not actually track the service of meals to children. Instead, Abukar created the lists to bolster her false claims by listing the names of children AFEAP was purporting to serve. Abukar also submitted fake invoices and fabricated menus to purportedly document AFEAP's purchase of food and that the meals served complied with the program's strict nutritional requirements.

Abukar also paid bribes and kickbacks to employees of Feeding Our Future in exchange for the sponsorship of her fraudulent participation in the Federal Child Nutrition Program. Abukar received access, preferential treatment, and reimbursement for fabricated claims from Aimee Bock and others at Feeding Our Future in exchange for her payments of kickbacks and bribes.

Abukar and her co-conspirators created and used other companies to receive and siphon off the proceeds of the scheme. For example, Abukar fabricated payments for purported food supplies to make it appear that she was spending money on food. In reality, she was laundering the proceeds of the fraud. For example, a relative of Abukar incorporated a company called "MN Food Grocery" and opened up an

associated bank account. MN Food Grocery was a shell company and did not have any food distribution related operations.

Just a few weeks after incorporation of the shell company, Abukar transferred over $500,000 via checks from an AFEAP bank account to the bank account for MN Food Grocery. The checks had memo lines listing the payments for "food supplies" and "food supper." In reality, Abukar used MN Food Grocery and other entities to divert Federal Child Nutrition Program funds and convert them for her own use and the use of co-conspirators.

Two weeks later, the MN Food Grocery shell company transferred over $400,000 to an entity called Dimespeak Enterprises. Dimespeak was a company founded by Abukar's relative. Abukar and other co-conspirators used Dimespeak to launder proceeds of the food fraud. Dimespeak purchased a 37-acre plot of developable land in Lakeville, Minnesota. The land was purchased with $1.5 million transferred from AFEAP to a title company, funds from Dimespeak, and contributions from an entity run by other co-conspirators. Abukar and her co-conspirators intended to use the site as an investment and develop the land into residential homes.

AFEAP also paid at least $250,000 in Federal Child Nutrition Program funds to an aviation company based in Hungary for an airplane and delivery fees to Nairobi, Kenya.

In total, between October 2020 and January 2022, AFEAP claimed to have served over 3.2 million meals at those sites. AFEAP received approximately $5.8

million in Federal Child Nutrition Program funds from Feeding Our Future and Partners in Nutrition for participation in the federal food program.

3.    **Waiver of Pretrial Motions**. The defendant understands and agrees that she has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, she is withdrawing any motions previously filed.

4.    **Waiver of Constitutional Trial Rights.** The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.      **Additional Consequences**. The defendant understands that as a result of her conviction, she could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. The defendant has discussed with her attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6.      **Statutory Penalties**. The parties agree that conspiracy to commit wire fraud, as charged in Count 1 of the Indictment, carries statutory penalties of:

     a.      a maximum term of imprisonment of 20 years in prison;

     b.      a supervised release term of up to three years;

     c.      a fine of up to $250,000, or twice the gross gain or loss, whichever is greater; and

     d.      a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7.      **Guidelines Calculations**.      The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

     a.      Base Offense Level. The parties agree that the base offense level for wire fraud is 7. U.S.S.G. § 2B1.1(a)(1).

     b.      Specific Offense Characteristics. The parties agree that the offense level is increased by 18 levels because the loss is more than $3.5 million, but not more than $9.5 million. U.S.S.G. § 2B1.1(b)(1)(J). The parties agree that the offense level should be

increased by **2** levels because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable organization. U.S.S.G. § 2B1.1(b)(9)(A). The parties agree that the offense level should be increased by **2** levels because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits). The parties agree that no other specific offense adjustments apply.

c.  Chapter 3 Adjustments. The parties otherwise agree that, other than credit for acceptance of responsibility, no Chapter 3 adjustments apply.

d.  Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **2**-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Whether this reduction will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw her guilty plea after it is entered.

e.  Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category **I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will

7

be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.  Zero-Point Offender Adjustment. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

g.  Guidelines Range. If the adjusted offense level is **24**, and the criminal history category is **I**, the Sentencing Guidelines range is **51-63** months of imprisonment.

h.  Fine Range. If the adjusted offense level is **24**, the Sentencing Guidelines fine range is **$20,000** to **$200,000**. U.S.S.G. § 5E1.2(c)(3).

i.  Supervised Release. The Sentencing Guidelines call for a term of supervised release of not more than three years for Count 1. U.S.S.G. § 5D1.2(a)(2).

8.  **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.  **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant

to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

10.     **Revocation of Supervised Release.** The defendant understands that if she were to violate any supervised release condition while on supervised release, the Court could revoke her supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that she be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11.     **Special Assessment.** The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

12.     **Restitution Agreement.** The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. The defendant agrees that she owes restitution in an amount of $5,200,709.

9

13.    **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate her ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14.    **Forfeiture.** The Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1349, and any property traceable to such property, as charged in Count 1 of the Indictment. The Defendant admits that the property subject to forfeiture includes, but is not limited to:

      a.    The real property located in Lakeville, Minnesota, PID number 220121053010, consisting of a 37-acre parcel of land; and

      b.    A Magnus Fusion 212 Aircraft;

The Defendant admits that the Property is subject to forfeiture because it was involved in the Conspiracy to Commit Wire Fraud or is traceable to such property.

15.    **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range as determined by the Court, and an appeal by the government of the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range as determined by the Court.

The defendant also waives the right to collaterally attack her conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the

11

offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17.    **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with her decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this

plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Dated:   1/29/25

LISA D. KIRKPATRICK
Acting United States Attorney

BY:   HARRY M. JACOBS
JOSEPH H. THOMPSON
MATTHEW S. EBERT
DANIEL W. BOBIER
Assistant United States Attorneys

Dated: 01/24/2025

AYAN FARAH ABUKAR
Defendant

Dated: 1/24/25

DEBRA HILSTROM
RYAN PACYGA
Counsel for Defendant

13